# IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LOVEPREET SINGH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-279-J** |
| | ) | |
| **SCARLET GRANT, Warden of Cimarron** | ) | |
| **Correctional Facility; MARKWAYNE** | ) | |
| **MULLIN, Secretary of Department of** | ) | |
| **Homeland Security; TODD BLANCHE,** | ) | |
| **Acting United States Attorney General;** | ) | |
| **ROBERT CERNA, Field Office Director of** | ) | |
| **Enforcement and Removal Operations,** | ) | |
| **Immigration and Customs Enforcement** | ) | |
| **Dallas Field Office,** | ) | |
| | ) | |
| **Respondents.[1]** | ) | |

## REPORT AND RECOMMENDATION

---

[1] Scarlet Grant is a proper respondent in this matter. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."). But because United States Immigration and Customs Enforcement "is in complete control of detainees' admissions and release" and is housed within the Department of Homeland Security, "the Attorney General of the United States [Todd Blanche, Acting] and the Secretary of Homeland Security [Markwayne Mullin]" are also appropriate respondents. *Rafati v. Barr*, Case No. 20-CIV-411, 2020 WL 12968837, at *1 (E.D. Okla. Dec. 22, 2020) (quoting *Calderon v. Sessions*, 330 F. Supp. 3d 944, 953 (S.D.N.Y. 2018)); *cf. Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1212 (D. Colo. 2013) ("[T]his Court concludes that either the Attorney General or [the Department of Homeland Security] Secretary is the proper respondent."). And the response brief is filed on behalf of Robert Cerna, despite him not being a respondent named in the Petition. (Doc. 8, at 2). Thus, the undersigned adds Markwayne Mullin, Todd Blanche, and Robert Cerna as respondents. *See Dopp v. McCoin*, No. CIV-18-520-D, 2019 WL 3071984, at *2 (W.D. Okla. Feb. 28, 2019) ("If a petitioner names the wrong respondent, this Court may simply substitute the correct party."), *adopted*, 2019 WL 1952693 (W.D. Okla. May 2, 2019).

Petitioner Lovepreet Singh, a citizen of India proceeding *pro se*,[2] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[3]  (Doc. 1).[4]  United States District Judge Bernard M. Jones, II referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  (Doc. 3).  In accordance with the briefing schedule, (Doc. 6),[5] Respondents timely filed a response.[6]  (Doc. 8). Petitioner filed a Reply.  (Doc. 10).[7]  As fully set forth below, the undersigned recommends

---

[2] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But the court cannot serve as Petitioner's advocate, creating arguments on his behalf.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[3] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma.  (Doc. 1, at 1).

[4] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[5] The Court entered a briefing schedule on February 18, 2026, that was not delivered to the United States Attorney for the Western District of Oklahoma.  (Doc. 5).  The undersigned entered a second briefing schedule on March 6, 2026, which is the operative filing.  (Doc. 6).  Petitioner submitted a letter asking to have the Petition confessed because Respondents did not timely respond.  (Doc. 9).  Respondent timely responded under the operative briefing schedule, so the undersigned declines to recommend that the Petition be confessed. And if this Report and Recommendation is adopted, Petitioner's request is moot.

[6] The response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility, because she is not a federal official.  (Doc. 8, at 2 n.1). The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

[7] The operative briefing schedule, (Doc. 6), erroneously granted Petitioner 7 days from the filing of Respondents response to file a reply.  It is this undersigned's practice to give *pro se* Petitioners at least 14 days to file documents, given the realities of prison mail.  Thus, the undersigned deems the Reply timely filed, as it was filed 14 days after the Response.

that the Petition (Doc. 1) be **DENIED** as to immediate release but **GRANTED** as to a bond hearing under § 1226. It is further recommended that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within 7 days of the judgment in this matter, or else release him from custody. It is recommended that the Court order that at the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten days of the Court's order.

## I.    Introduction to the Immigration and Nationality Act

The two sections of the Immigration and Nationality Act ("INA") at issue are 8 U.S.C. § 1225 and § 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). Under § 1225(b)(2)(A), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." (Emphasis added). In other words, the alien is subject to mandatory detention while he awaits removal proceedings.

On the other hand, § 1226(a) authorizes detention of an alien "on a warrant issued by the Attorney General." *Id.* § 1226(a) (citation modified).  An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Accordingly, if Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he must be detained and is not entitled to a bond hearing.  If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing and potentially release.

For many years, Immigration Judges applying the INA provided bond hearings for aliens who had entered the country without admission or inspection and were later apprehended and detained by ICE.  *See Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025) ("*Hurtado*").  But on September 5, 2025, the Board of Immigration Appeals ("BIA") determined that an immigration judge does not have authority to hear a request for bond by an alien present in the United States who has not been admitted after inspection because the alien was "subject to mandatory detention" under § 1225. *Id.* at 229.  This change in interpretation of the INA has led to a nationwide influx of habeas corpus petitions seeking bond hearings for aliens who were recently detained after living for years in the United States without inspection.

## II.    Factual Background

Petitioner entered the United States without inspection or parole on May 9, 2023. (Doc. 8, at 6; *id.* at Ex. 1, at 1).  Petitioner alleges that on May 11, 2023, he was "release[d] on conditional parole" on his own recognizance "subject to set conditions of release." (Doc. 1, at 2, 6; Doc. 10, at 2).  On August 8, 2023, ICE instituted removal proceedings against Petitioner, alleging he was an alien present in the United States who had not been admitted or paroled and that "at the time of application for admission, [was] not in possession of" a suitable travel document or document of identity and nationality.  (Doc. 8, at Ex. 1, at 1, 4).  During his removal proceedings, Petitioner filed a Form I-589 asylum application and an amended application, seeking lawful residence in the United States. (*See id*. at Exs. 2, 3).

ICE re-apprehended Petitioner on or about December 17, 2025.  (Doc. 1, at 4).  He alleges that he was "re-detained . . . at a weigh station under the guise of inspection and no probable cause without prior notice or material change in circumstances and no warrant." (Doc. 10, at 2).  Respondents assert that Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2)(A).  (Doc. 8, at 8-10).  Petitioner asserts the "immigration judge refus[ed] to grant [a] bond hearing for lack of jurisdiction."  (Doc. 1, at 6).  Petitioner's removal proceeding    is    ongoing.    *See*    EOIR    Automated    Case    Information, https://acis.eoir.justice.gov/en/caseInformation (last accessed Apr. 3, 2026).

## III.    Petitioner's Claims and Respondents' Responses

In Ground I, Petitioner asserts a "violation of ICE policy and procedures and INA regulations" when his release was revoked without prior notice and a reasonable time to

respond.  (Doc. 1, at 6).  In Ground II, Petitioner contends his arrest and detention is unlawful and arbitrary.  (*Id.*).  In Ground III, Petitioner asserts the immigration judge has incorrectly concluded that he does not have jurisdiction to grant a bond hearing.  (*Id.*)  In Ground IV, he contends his detention is in violation of the Fifth Amendment.  (*Id.* at 7). Petitioner requests that the Court order his immediate release from custody, on an order of supervision, or subject to his previous conditional release.  (*Id.*).  He also requests that the Court order Respondents to not re-detain him without a violation of his conditions of release.  (*Id.*)

Respondents contend that review of Petitioner's claims is jurisdictionally barred. (Doc. 8, at 6-7).  They assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A).  (*Id.* at 8-10).  Respondents state that Petitioner's due process argument is premature and without basis.  (*Id.* at 11-12).  And they contend that ordering immediate release based on alleged regulatory violations is not appropriate.  (*Id.* at 12-15).

In Reply, Petitioner asserts that this Court has jurisdiction to consider his Petition, (Doc. 10, at 2-4); that his detention is governed by § 1226(a), not by § 1225(b)(2)(A), (*id.* at 4-6); and that his re-detention without a bond hearing violated his right to due process, (*id.* at 7-9).  Petitioner again requests his immediate release on an order of supervision, (*id.* at 9-12), or in the alternative, a "bond hearing before a neutral decision maker where ICE has the burden of proving flight risk or dangerousness to justify continued detention," (*id.* at 12).

## IV.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## V.    Analysis

### A.    The Court Has Jurisdiction To Consider the Petition.

Respondents first argue this Court lacks jurisdiction to consider Petitioner's claims, based on 8 U.S.C. §§ 1252(g) and 1252(b)(9).  (Doc. 8, at 6-7).  However, Judges of this District have consistently ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim does not arise from and "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders."  *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (same).  *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject matter jurisdiction" but assuming it

7

had jurisdiction to proceed to the merits). The undersigned agrees with the majority of Judges of this District in finding that jurisdiction exists to consider Petitioner's habeas challenge to detention.[8]

### B. The Undersigned Agrees With the Majority of this District Court and District Courts Nationwide that the Detention of Aliens Like Petitioner is Governed by § 1226(a).

According to Petitioner, his re-detention under § 1225(b)(2)(A) and the immigration judge's refusal to grant a bond hearing are unlawful because he is properly subject to § 1226(a). (Doc. 1, at 6; Doc. 10, at 4-6). Respondents contend that because Petitioner did not enter the country lawfully and has not departed, he is still considered an "applicant for admission" who is "seeking admission" and therefore he is properly detained under § 1225(b)(2). (Doc. 8, at 8-10). According to Respondents, "every 'applicant for admission' is inherently and necessarily 'seeking admission.'" (*Id*. at 9).

The undersigned agrees with Petitioner. Indeed, the undersigned has issued more than twenty Reports and Recommendations setting forth a detailed analysis of the statutory text and legislative history of § 1225 and § 1226, a discussion of the BIA's application of the statutes for the past three decades, and comparison to the reasoning of numerous recent cases from both within and outside this District that have considered the same issues.

---

[8] Respondents also contend that "Petitioner presents a veiled challenge to the basis for the commencement of proceedings against him," which they argue is foreclosed by 8 U.S.C. § 1226(e). (Doc. 8, at 7). Thus, they argue that the "Court lacks jurisdiction to consider [Ground] I of the Petition." (*Id.*) The undersigned construes Ground I to challenge Petitioner's re-detention after a period of release on his own recognizance while his removal proceedings were pending, not as a challenge to the commencement of removal proceedings. As stated previously, the Court has jurisdiction over habeas challenges to immigration detention. *See* Section IV.

Central to that analysis is the undersigned's conclusion that for § 1225(b)(2)(A) to apply, the alien must be both an "applicant for admission" and "seeking admission" and that

> the terms "applicant for admission" and "seeking admission" in § 1225(b)(2) do not cleanly apply to aliens like Petitioner. "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use of the present participle in § 1225(b)(2)(A) implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero* [*v. Baltazar*], 2025 WL 2977650, at *6 [(D. Colo. Oct. 22, 2025)] (citation modified).

*Damian v. Jones*, No. CIV-25-1561-J, 2026 WL 682545, at *7 (W.D. Okla. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 446295 (W.D. Okla. Feb. 17, 2026). Thus, the undersigned has consistently concluded that § 1226(a), not § 1225(b)(2)(A), governs the detention of aliens who were apprehended when they were already present in the country without admission, as opposed to arriving at the border.

In response to a growing number of habeas challenges in the Western District of Oklahoma, Chief Judge DeGiusti, Judge Palk, Judge Jones, Judge Russell, and Judge Heaton have repeatedly come to the same conclusion. *See Damian v. Jones*, No. CIV-25-1561-J, 2026 WL 446295 (W.D. Okla. Feb. 17, 2026); *Li*, 2026 WL 147438; *Gonzalez Cortes*, 2026 WL 147435; *Valdez*, 2025 WL 3709021; *Colin*, 2025 WL 3645176. Accordingly, the Judges have granted habeas relief in the form of bond hearings under § 1226(a).

Other district courts in the Tenth Circuit are in agreement. *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo*

*G.Z. v. Noem*, No. 25-CV-0600, 2025 WL 3755590, at \*10 (N.D. Okla. Dec. 29, 2025) (applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Cruz Valera v. Baltazar*, No. 25-CV-03744, 2025 WL 3496174, at \*3 (D. Colo. Dec. 5, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432, at \*3 (D.N.M. Nov. 14, 2025).

More generally, an "overwhelming, lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for aliens like Petitioner. *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. Nov. 26, 2025) (noting the contrary interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States"); *see also Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-5488, 2025 WL 3218243, at \*4 (E.D. Pa. Nov. 18, 2025) ("[O]f the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here.").

The Seventh Circuit Court of Appeals has weighed in on this issue. The court ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Seventh Circuit reasoned that

> § 1225(a)(1) defines an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And while a noncitizen arrested in the Midwest might qualify as "an alien present in the United States who had not been admitted," § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A).

*Id.* at 1061. Judges in this District have found the Seventh Circuit's analysis to be persuasive. *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez*, 2025 WL 3709021, at *2; *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026) (noting this Court's decision to apply § 1226 to a similarly situated petitioner "is in accord" with the Seventh Circuit).

In contrast, Judge Dishman and Judge Wyrick in this District have adopted Respondents' position that aliens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States at the time of their apprehension by ICE. *See Gutierrez Sosa*, 2026 WL 36344; *Alvarado Montoya*, 2025 WL 3733302. Respondents further cite cases from across the country in which district judges have done the same. (*See* Doc. 8, at 2 n.2). Additionally, the Fifth and Eighth Circuit Courts of Appeals recently applied § 1225 to a similar habeas challenge, agreeing with Respondents' position based on "the relevant provisions and structure of the [INA], the statutory history, and Congressional intent." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026); *see Avila v. Bondi*, --- F.4th ----, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The undersigned respectfully disagrees with the textual analysis and statutory interpretations by these courts. Notably, several Judges in this District have expressly acknowledged the Fifth and Eighth Circuit rulings but have not altered their analysis. *See Campa v. Johnson*, No. CIV-26-1-

HE, 2026 WL 446978, at *1 (W.D. Okla. Feb. 17, 2026) ("The 2-1 decision in *Buenrostro-Mendez* makes clear that strong arguments support both statutory readings of the parties. The court, however, remains persuaded that § 1226(a) governs and continues to follow similar rulings by the judges in this district and the Seventh Circuit Court of Appeals in *Castanon-Nava*."); *Abhishek v. Holt*, No. CIV-26-221-SLP, 2026 WL 852091, at *2 & n.6 (W.D Okla. Mar. 27, 2026) (granting habeas relief despite contrary authority in Western District of Oklahoma and Fifth and Eighth Circuits); *Raj v. Anda-Ybarra*, No. CIV-26-125-D, 2026 WL 852093, at *1 & n.1 (W.D. Okla. Mar. 27, 2026) (granting habeas relief despite contrary authority in Fifth and Eighth Circuits).

Significant to the instant case, Judges in this District have held that an alien's application for asylum does not render him subject to §1225(b)(2)(A). *See, e.g.*, *Singh v. Bondi*, No. CIV-26-43-J, 2026 WL 483482, at *2 (W.D. Okla. Feb. 20, 2026) (rejecting Respondents' argument that Petitioner is seeking admission and § 1225(b)(2) therefore applies because he filed a Form I-589 asylum application during his removal proceedings); *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li*, 2026 WL 147438, at *1 (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

Moreover, the conclusion that § 1226 governs an alien's recent detention by ICE is only bolstered in cases like the instant one, in which Petitioner was previously detained by ICE and later released on recognizance pursuant to § 1226. (Doc. 1, at 6). *See, e.g.*, *Vielma Uzcategui v. Brooksby*, Case No. 4:26-cv-20-DN-PK, 2026 WL 622751, at *9 (D. Utah

12

Mar. 5, 2026) (finding petitioner was entitled to a bond hearing under § 1226(a) when she had been originally released on her own recognizance under § 1226(a) and then later detained without bond because "[a]s numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later switching tracks to subject her to mandatory detention under § 1225(b)(2). The rule is simple: Sections 1226(a) and 1225(b) cannot be applied simultaneously.") (citation modified); *Bello Chacon v. Hermosillo*, No. 25-CV-2299, 2025 WL 3562666, at \*2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release on recognizance under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226"); *Chen v. Soto*, No. CV 25-17198, 2025 WL 3527239, at \*3 (D.N.J. Dec. 9, 2025) (granting habeas relief and ordering respondents to provide a bond hearing for petitioner previously released on his own recognizance pursuant to § 1226 because previously treating petitioner under § 1226 "defeats respondents' new position that a different statutory provision applies").

Based on the foregoing analysis, the undersigned recommends that the Court finds that § 1226(a) governs Petitioner's detention.

**C.      Petitioner's Detention Without a Bond Hearing Violates Procedural Due Process.**

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or

permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

Respondents argue that "[g]ranting the Petition under the premise that all detention must be subject to bond hearings would require a reading of the Due Process Clause that the Supreme Court has never endorsed and in fact has repeatedly avoided," and that for non-citizens, "the INA provides the only process due under the Constitution." (Doc. 8, at 11). The undersigned's decision does not reach "all detention." But for non-citizens subject to § 1226(a), the INA provides the due process of a bond hearing. Indeed, the undersigned finds that (1) as a non-citizen properly classified under § 1226, Petitioner has a protected liberty interest in freedom from immigration detention, and (2) the procedure of the bond hearing as provided in § 1226 is necessary to ensure that deprivation of that protected liberty interest accords with due process. Thus, Petitioner's procedural due process rights have been violated by Respondents' decision to detain him without a bond hearing. As articulated by a district court of this Circuit:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ [immigration judge]. Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's

14

continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (internal citation omitted); *see also Requejo Roman v. Castro*, 2026 WL 125681, at *8 (D.N.M. Jan. 12, 2026) ("Because Petitioner is subject to § 1226's discretionary detention provision rather than mandatory detention under § 1225, he is entitled to a bond hearing. Classifying Petitioner under § 1225 has thus deprived him of due process by denying him the opportunity to be heard at such a hearing.") (citations omitted); *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation."  After all, "the facts clearly demonstrate that [the petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations.") (first quoting *Garcia Cortes v. Noem*, No. 1:25-CV-02677-CNS, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025), then quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025)); *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a). The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct. Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights.").

15

Although Petitioner seeks his immediate release from custody, the undersigned finds that Petitioner must be provided a bond hearing under § 1226(a) in order to rectify the violation of his due process rights.  Petitioner argues that at such a bond hearing, the government should bear "the burden of proving flight risk or dangerousness to justify continued detention." (Doc. 10, at 12).  The undersigned agrees, and finds persuasive the thorough and well-reasoned analysis of a court in this Circuit considering very similar facts.  In *Requejo Roman v. Castro*, 2026 WL 125681, at *8 (D.N.M. Jan. 12, 2026), the petitioner entered the United States in 2022 and then was shortly thereafter arrested on a warrant pursuant to § 1226 and placed in removal proceedings.  *Id*. at *1.  He was later released on a $2,000 bond "after an IJ determined he was neither a flight risk nor a danger to the community." *Id*.  In October 2025, he was arrested during a traffic stop, placed back into removal proceedings, and detained under § 1225(b)(2)(A).  *Id*.  He filed a petition for writ of habeas corpus challenging his detention without a bond hearing as in violation of, *inter alia*, his due process rights.  *Id*. at *2.  The district court agreed, *see id.* at *8, and then went on to consider the parameters of that hearing.  The court observed that:

> The statute is silent as to who bears the burden of proving a noncitizen's eligibility for bond under § 1226(a), but federal regulations and a BIA decision suggests that, under normal circumstances, the burden is on the noncitizen to demonstrate that their "release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).  *See also In Re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999).  But these are not normal circumstances. The Court must assess what due process requires at this point, after Petitioner has been unlawfully detained without due process, in violation of his constitutional rights, for nearly three months.
>
> In determining what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in

16

*Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that *Mathews* applies); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Several district courts within the Tenth Circuit, too, have applied *Mathews* when addressing the exact issue before the Court in this case—the classification of a noncitizen under § 1225 and resultant denial of a bond hearing. *See, e.g., Hernandez-Parrilla v. de Anda-Ybarra*, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Barreno v. Baltasar*, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025); *Garcia Cortes v. Noem*, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025). In determining the process due an individual, *Mathews* requires the Court to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. at 335.

All three *Mathews* factors weigh in favor of affording Petitioner a bond hearing at which the Government bears the burden of proof. First, the private interest at stake for Petitioner is his liberty. As Petitioner points out, an individual's interest in being free from detention is "the most elemental of liberty interests." Doc. 1 at ¶ 55 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

The second *Mathews* factor also weighs in favor of shifting the burden at a future bond hearing. Given that Petitioner is appropriately classified under § 1226 and subject to discretionary detention, the risk of erroneously depriving him of his freedom is high if no IJ has assessed his risk of flight or dangerousness. *See Lopez-Campos*, 797 F.Supp.3d at 785. This risk is even more pronounced in this case, as the evidence shows that Mr. Requejo Roman was released on bond in 2022 after an IJ determined he was neither a flight risk nor a danger to the community. Requiring the Government to justify detention reduces the risk of an ongoing and erroneous deprivation of Petitioner's liberty. *See L.G. v. Choate*, 744 F.Supp.3d at 1183-84 (offering additional reasons why, when there are due process concerns, *Mathews'* second factor supports shifting the burden to the Government in a bond hearing).

Finally, on the third *Mathews* factor, the Government's interest in protecting the community and ensuring Petitioner's appearance at his removal proceedings is certainly weighty. *See id*. at 1185 (citing *Zadvydas v. Davis*,

533 U.S. at 690). But this interest dissolves if Petitioner is not a flight risk or a danger to his community. As Petitioner points out, an IJ already determined in 2022 that Mr. Requejo Roman was neither a flight risk nor a danger when he was released on bond the first time, and the Government has not demonstrated any change in circumstances since then. In this case, where Petitioner has previously proven he is not a flight risk or a danger, the Court finds the Government has no interest in detaining Petitioner absent a showing by them that the circumstances have changed such that Petitioner's continued detention is justified on flight risk and/or dangerousness grounds. This finding supports shifting the burden to the Government during his forthcoming bond hearing.

Nor does shifting the burden of proof impose an unreasonable administrative or fiscal burden on the Government—a key consideration within *Mathews'* third factor. The United States has vast resources at its disposal to gather information about Petitioner's eligibility for bond. And requiring the Government to justify detention may actually promote their separate interest in conserving resources and managing overcrowding at ICE detention facilities. *See Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d. Cir. 2020). This, too, weighs in favor of shifting the burden to the Government.

. . .

In sum, the Government's misclassification of Petitioner under § 1225 deprived him of a bond hearing in violation of his due process rights. To address this violation, due process requires that he be provided a bond hearing at which the Government bear the burden of proving that Petitioner is not a flight risk or a danger to the community. Following *L.G. v. Choate*, the standard of proof the Government must meet is one of "clear and convincing evidence." 744 F.Supp.3d at 1186.

*Id*. at *8-10 (selection citations shorted or omitted).

This approach has been followed by not just Judge Urias in New Mexico, but at least two of his colleagues. *See e.g., Mieles-Parraga v. Bondi*, No. 2:26-CV-00646-KG-JHR, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (Chief Judge Gonzales finding that petitioner's due process rights were violated by his detention under § 1225(b)(2)(A), considering the *Mathews* factors, and concluding that "[t]he proper habeas remedy is a

18

prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Mieles-Parraga is a flight risk or danger to the community. Although under normal circumstances, the burden at a § 1226 hearing is on the noncitizen to show that detention is unwarranted, Mr. Mieles-Parraga's unlawful detention in violation of his constitutional rights shifts that burden to the Government. A noncitizen's strong private interest in being free from civil detention outweighs the Government's comparatively minimal burden to justify custody.") (citation modified); *Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at *1 (D.N.M. Jan. 13, 2026) (Judge Strickland utilizing same analysis). Moreover, in the District of Colorado, "the weight of authority. . . is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (collecting cases and ordering Respondents to provide petitioner "with a bond hearing under § 1226(a) within seven days of this Order, at which the Government shall bear the burden of justifying [his] continued detention by clear and convincing evidence of his dangerousness to the safety of the community, or of his risk of flight"). The undersigned recommends that the Court follow the approach outlined above in Petitioner's case.

## VI.     Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **DENIED** as to immediate release but **GRANTED** as to a bond hearing under § 1226. It is further recommended that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within 7 days of the

19

judgment in this matter, or else release him from custody. It is recommended that the Court order that at the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten days of the Court's order.

**The Court advises the parties of their right to object to this Report and Recommendation by April 10, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[9] The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[9] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 3rd day of April, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

21